# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| **SABRE INDUSTRIES INC.** | **CIVIL ACTION NO. 5:19-CV-00934** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JOSEPH MCLAURIN** | **MAG. JUDGE MARK L. HORNSBY** |

## RULING

Pending before the Court is Plaintiff Sabre Industries, Inc.'s ("Sabre") motion for preliminary injunction [Doc. No. 2] against Defendant Joseph McLaurin ("McLaurin").[1] A hearing was held on the motion on August 15, 2019.

For the following reasons, the Motion for Preliminary Injunction is GRANTED IN PART and DENIED IN PART.

## I.	FACTS AND PROCEDURAL BACKGROUND

Sabre alleges that it is a producer of engineered products used for electric transmission and distribution and wireless telecommunications, offering a full range of engineered towers, poles, structures, and related services. McLaurin began his employment with Sabre on August 17, 2009, as a Materials Manager. On February 1, 2013, McLaurin became the Production Support Manager. In this position, he was responsible for working with developing M2M, supporting production, and helping with transportation.

On June 1, 2014, McLaurin became the Director of Support Production. In this position, he was responsible for converting incoming purchase orders into casting schedules and driving a

---

[1] On July 19, 2019, the Court denied Sabre's motion for a temporary restraining order for failure to comply with the provisions of Rule 65(b) of the Federal Rules of Civil Procedure.

schedule of shelters to production.  He was in charge of the Production Support Group (PSG) and was in charge of transportation.

On or about June 16, 2014, McLaurin entered into a Non-Disclosure, Non-Solicitation, and Fair Competition Agreement with Sabre ("the Agreement").  Sabre presented evidence the consideration for McLaurin entering into the Agreement included, among other things, continued employment and a $25,000 bonus.  According to Sabre, the Agreement was entered into for the express purpose of, among other things, maintaining certain confidential business information of Sabre and to preserve Sabre's relationships with persons with whom it does business.

On August 16, 2014, McLaurin became the Director of Production Reporting and Systems.  In this position he ran the PSG and worked with reporting production from scheduling to follow up when products were shipped.

On May 25, 2018, McLaurin moved into the position of Manager of Production Support.

On or about August 15, 2018, McLaurin became the Temporary Production Manager.  In this position, he had a team of four supervisors to drive the production schedule.  He was in charge of his team's safety, quality, and production.  His focus was on improving quoted work and building product to quote.  He worked with the M2M during the first part of his move to Temporary Production Manager.

On May 8, 2019, McLaurin's employment with Sabre was terminated.  Sabre contends he was terminated for cause.

Upon his termination, McLaurin went to work for Module X Solutions, L.L.C., ("MXS"), one of Sabre's competitors.  Sabre contends that McLaurin's acceptance of employment with MXS is contrary to the Agreement.  Sabre further contends that McLaurin has used and

disclosed Sabre's Confidential Information, including, but not limited to, Sabre's confidential and proprietary information pertaining to its clients, their needs, and Sabre's rates and fee structure for such clients, and is using such information in an effort to compete unfairly with Sabre for his own benefit and that of his new employer, MXS, all in violation of the Agreement.

Sabre additionally contends that McLaurin has actively solicited Sabre employees to accept employment with MXS and is using confidential Sabre employee lists containing skill sets, pay levels, and contact information to solicit Sabre employees, again all in violation of the Agreement.

Sabre seeks damages for breach of contract and requests an injunction restraining McLaurin from continuing to violate the Agreement.

McLaurin, on the other hand, contends that Sabre's motion for injunctive relief should be denied because (1) the non-competition provision of the Agreement is an unlawful restraint on business or trade prohibited by La. R.S. 23:921 and thus unenforceable; (2) the non-solicitation provision of the Agreement restrains the rights not only of McLaurin, but other Sabre employees and is also a violation of La. R.S. 23:921; and, (3) Sabre has failed to allege anything more than a speculative violation of the confidentiality provision of the Agreement and must amend its complaint before any request for affirmative or injunctive relief can be considered.

On July 26, 2019, the Court conducted a telephone conference with counsel for the parties. During that conference, the Court set a hearing on Sabre's request for a preliminary injunction for August 15, 2019.

On August 15, 2019, a hearing was conducted on Sabre's request for a preliminary injunction. Sabre moves this Court for a preliminary injunction ordering McLaurin to return of

all of Sabre's Proprietary Information in his possession, ordering McLaurin to cease soliciting Sabre employees for employment with MXS, and prohibiting and enjoining McLaurin from continuing his employment with MXS.

To support the motion, Sabre presented testimony from Thomas Jagielski, its Vice-President and General Manager for Sabre Industries Bossier City; Shannon Lee, its Supervisor of Energy Storage Sabre Industries Bossier City; and Les Walton, Electrical Lead, Energy Storage, Sabre Industries Bossier City. Sabre also called McLaurin on cross.

McLaurin presented testimony from Stephen L. Schoonover, founder of both Sabre and MXS; Patricia Netherton, Director of Human Resources and Hiring at MXS; and from himself.

The Court is now prepared to rule on the motion for preliminary injunction.

## II. LAW AND ANALYSIS

### A. Motion for Preliminary Injunction

There are four traditional criteria a party moving for a preliminary injunction must satisfy: "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Canal Auth. Of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *see also Glossip v. Gross*, 135 S. Ct. 2726, 2736 (2015) ("'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'") (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)), reh'g

4

denied, 136 S. Ct. 20 (2015)). Because a preliminary injunction is "an extraordinary remedy," it "should only be granted if the movant has "clearly carried the burden of persuasion on all four . . . prerequisites." *Mississippi Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618 (5th Cir. 1985). If the movant fails to meet its burden as to any one of the four prerequisites, the injunction may not issue. *See Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

Ultimately, after applying these standards, the Court finds that Sabre has met its burden of convincing the Court that the extraordinary remedy of a preliminary injunction is appropriate in this case prohibiting and enjoining McLaurin from continuing his employment with MXS and enjoining McLaurin from soliciting Sabre employees for employment with MXS. However, the Court finds that Sabre is not entitled to an injunction ordering McLaurin to return Sabre's Confidential or Proprietary Information.

        **1.**      **Substantial Likelihood of Success on the Merits in this Case**

To meet the burden with regard to the criteria of substantial likelihood of success, "the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013); *see also Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011) (citing CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, 11a FEDERAL PRACTICE & PROCEDURE § 2948.3 (2d ed. 1995)).

        **a.**      **Enforceability of the Agreement**

Sabre relies on the terms of the Agreement. McLaurin contends that there is no substantial likelihood that Sabre will succeed on the merits inasmuch as the Agreement is unenforceable because it impermissibly restrains non-competitive employment and violates the

provisions of La. R.S. 23:921.

Louisiana law has a strong public policy against the restraint of trade, including non-competition and non-solicitation agreements. *See SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So.2d 294, 298 (La. 2001). Under Louisiana Revised Statute 23:921(A)(1), "[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void." Subsection (C) provides, in pertinent part:

> Any person, . . . who is employed as an . . . employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. . . .

LA. REV. STAT. § 23:921(C).

> In short, "a valid non-competition agreement may limit competition *only* in a business similar to that of the employer, in a specified geographic area, for up to two years from termination of employment." *Parker v. Surface Works, Inc.*, No. 2015-1583, 2016 WL 5110048, at *3 (La. Ct. App. 1st Cir. Sept. 16, 2016) (emphasis in original); *see also Affordable Roofing, Siding, and Gutters, Inc. v. Artigues*, No. 16-16872, 2017 WL 713693, at *3 (E.D. La. Feb. 23, 2017) (Africk, J.) ("Non-solicitation of customers provisions in Louisiana are subject to the same restrictions as non-compete provisions.").

*O'Sullivan v. Sunil Gupta, M.D., LLC*, No. CV 17-609, 2017 WL 3438349, at *2 (E.D. La. Aug. 10, 2017); *see also Ferrellgas, L.P. v. McConathy*, Civil Action No. 1:10-cv-00178, 2010 WL 1010831, at *3 (W.D. La. March 15, 2010).

McLaurin argues that Sabre is not entitled to preliminary injunctive relief because the Agreement is not enforceable and MXS is not Sabre's competitor. First, he contends that, although Paragraph 8 of the Agreement appears to limit his non-competition period to one-year,

6

other modifying provisions and onerous obligations imposed elsewhere in the Agreement, specifically, Paragraphs 16 and 21, impose greater obstacles to his post-Sabre job-hunting than La. R.S. 23:921(A)(1) permits. According to McLaurin, Paragraphs 16 and 21 impermissibly expand the scope of the employment restraint by (1) requiring him to permit Sabre to screen his potential employers and job assignments; (2) requiring him to give notice of the Agreement to all potential employers, whether or not a competitor and whether or not in a restricted parish; (3) permitting Sabre to seek injunctive relief for anything it perceives to be a "threatened" violation; and (4) requiring him to reimburse Sabre for the attorney's fees and costs in a legal proceeding, regardless of Sabre's success, while denying this remedy to him.

He contends these provisions, collectively, expand the scope of restraint by deterring non-competitive employers from hiring him and forcing him to "play it safe" with respect to post-Sabre employment and avoid seeking otherwise non-competitive employment for fear of triggering a legal proceeding in which Sabre, having contracted out of a bond and the payment of attorney's fees, faces no expense. He further contends that Paragraph 16's tolling clause stating "the restrictive periods set forth in this Agreement shall not expire and shall be tolled during any period in which I am in violation" potentially extends the duration of the restraint period beyond the duration of the covenant, without limit.

Moreover, even if the Agreement is otherwise enforceable, McLaurin contends that Sabre is not entitled to injunctive relief because MXS is not in the same business.

After careful review, the Court finds that Sabre has established that it has a substantial likelihood of success on the merits of enforcing the Agreement.

The Agreement prohibited McLaurin in part from the following:

    a. Directly or indirectly disclosing, using for his own benefit or for the benefit of anyone else, Sabre's confidential and proprietary information. (¶ 7); or

    b. For a period of one year following termination of employment:

        i. engage in, assist, be employed by, or have any active interest in a business interested with any company that develops, manufactures, markets, and/or sells products competitive to Sabre's products, including, but not limited to, MobileXSolutions, located which in the parishes of Caddo, Bossier, Webster, Calcasieu, Cameron, Lafayette, St. Landry, Evangeline, Rapides, West Baton Rouge, East Baton Rouge, Jefferson and Orleans (¶ 8); or

        ii. hire, attempt to hire, or solicit any employee of Sabre (¶ 9).

Paragraph 21 appears to be a standard notification provision which requires McLaurin to provide Sabre with written notice of prospective employment he seeks during the one-year period following his termination and requires McLaurin to provide his prospective employers with a copy of his Agreement. McLaurin provides no authority for his argument that this provision imposes a substantial and impermissible barrier to subsequent employment.

The parties entered the contract at arm's length, and there has been no allegation of coercion or adhesion. Further, Paragraph 10 states, in part, "I further acknowledge that the restrictions in this Agreement will not prevent me from engaging in work or from obtaining employment or making a living, other than as expressly set forth in this Agreement after the end of my employment with Company." [Doc. No. 2-2, p. 2].

Additionally, the Court finds that the Agreement contains a valid tolling provision which is sanctioned by Louisiana law. The provision provides for tolling of the Agreement's

8

enforcement provision during McLaurin's breach of the Agreement. The Fifth Circuit Court of Appeals, interpreting Louisiana law, has upheld the tolling provisions of noncompetition agreements. *See Gaylord v. Broadcasting Co. v. Cosmos Broadcasting Co*, 746 F. 2d 251, 253, n. 1 (5th Cir. 1984) ("The parties may contractually provide for the tolling of the noncompetition period, if an employee breaches a covenant not to compete and the resulting civil proceeding to enforce the covenant consumes more time than the period itself.")

Sabre asserts that McLaurin was paid a bonus of $25,000 for entering into the Agreement. However, at the hearing, McLaurin disputed that assertion and instead asserts that he was paid the $25,000 as a retention bonus to stay with the company. This is of no moment, as McLaurin does not deny entering into the Agreement or signing it, whether as a condition of his continued employment or otherwise.

Finally, the Court finds that the Agreement does not violate La. R.S. 23:921 based on the legal costs provision. Parties to a noncompete agreement may provide for an award of attorney's fees in the event of a breach. *See Imperial Dry Cleaners & Laundry, Inc. v. Imperial Carpet Cleaning & Sales, Inc.,* 693 So. 2d 830, 834 (La. App. 2d Cir. 1997) ("[i]n general, a successful litigant may recover attorney's fees when specifically provided for by contract.").

With regard to McLaurin's contention that MXS is not Sabre's competitor, the Court finds to the contrary. The evidence presented at the hearing belies that argument. Mr. Schoonover testified that he founded Sabre, built it, and then sold it. He then founded MXS. He further testified about other extensive litigation between the two companies. He additionally acknowledged that the MXS website shows that the two companies are engaged in similar commercial activities.

The Court, therefore, concludes that there is a substantial likelihood that Sabre will succeed on the merits as to the issue of whether the Agreement is valid and enforceable Against McLaurin in his current employment.

### b. Continued Employment with MXS

It is undisputed that McLaurin accepted employment with MXS shortly after he was terminated by Sabre, which was a violation of Paragraph 8. Paragraph 16 states in pertinent part:

> I acknowledge that full compliance with the terms of this Agreement is necessary to protect the business and goodwill of Company and that a breach of this Agreement will irreparably and continually harm Company, for which money damages may not be adequate. Consequently, I understand that, in the event I breach or threaten to breach any of these covenants, Company will suffer irreparable harm, for which money damages alone will be an inadequate remedy. Thus, I agree that Company shall be entitled to a preliminary or permanent injunction without posting a bond in order to prevent the continuation of such harm, in addition to all other remedies available to Company.

Therefore, Sabre is entitled to a preliminary injunction prohibiting and enjoining McLaurin from continuing his employment with MXS

### c. The Non-Solicitation Clause

McLaurin next argues that there is not a substantial likelihood that Sabre will succeed on the merits as to its allegation that he has violated the non-solicitation clause in the Agreement. Paragraph 9 of the Agreement states in pertinent part,

> [F]or a period of two (2) years following the end of my employment with Company, regardless of the reason, I will not hire, attempt to hire, or solicit any individual who is an employee of the Company on my last day of employment or was an employee of the Company at any time during the one (1) year period preceding the end of my employment with Company.

McLaurin argues that this clause is a restraint prohibited by La. R.S. 23:921 and thus null and unenforceable. McLaurin acknowledges that in *CDI Corp. v. Hough*, 2008-0218 (La. App. 1 Cir. 3/27/09), 9 So. 3d 282, 292, the Louisiana First Circuit opined that a non-solicitation clause was not a restraint on the employee's exercise of his trade or profession, but "merely restricts those whom he can recruit for his new company" and thus was not governed by R.S. 23:921. McLaurin, however, invites the Court to adopt the dissenting opinion of Judge Welch in that case. Judge Welch observed that a non-solicitation clause

> "has the effect of restraining Mr. Hough's former co-employees from exercising a lawful profession, trade, or business since Mr. Hough is not allowed to advise them of competitive opportunities. These restrictions are in derogation of the public policy premised on the fundamental right of individuals to seek success in our free enterprise society."

*Id.*, at p. 294-295.

The Court declines the invitation. La. R.S. 23:921(C) does not prevent enforcement of a clause or provision prohibiting the solicitation of employees. *See Smith, Barney, Harris Upham & Co. v. Robinson*, 12 F.3d 515, 516 (5th Cir. 1994) ("We find that La.R.S. 23:921 does not apply to the instant agreement not to solicit employees of the former employer.") Thus, it is possible for this provision to be enforced.

At the hearing, McLaurin denied soliciting Sabre's employees, asserting further that he has no authority to hire anyone at MXS. However, the evidence at the hearing established that MXS has employed a number of former Sabre employees since McLaurin commenced working for it and that McLaurin is part of the MXS "interview team." Sabre also produced the testimony of one of its employees, Lew Walton, that McLaurin had attempted to solicit his

11

employment at MXS.

Thus, there is a substantial likelihood of success by Sabre, as to the issues of the validity of the non-solicitation clause and whether McLaurin has violated it. Sabre is thus entitled to a preliminary injunction enjoining McLaurin from soliciting Sabre employees for employment at MXS.

### d. Return of Proprietary Information

Sabre also seeks the return of confidential or proprietary information. McLaurin argues that Sabre has failed to make a prima facie case that McLaurin possesses any such information. On this claim, the Court agrees.

The evidence at the hearing indicated that on the date McLaurin was terminated, he was escorted from the building and was not allowed to retrieve anything, including his personal belongings, from his office. McLaurin denied having any confidential or proprietary information, and Sabre produced no evidence to indicate he does.

Thus, there is little likelihood of success by Sabre on this issue.

### 2. Irreparable Harm

"A plaintiff seeking a preliminary, as opposed to a permanent injunction must show that the irreparable injury will occur 'during the pendency of the litigation' unless the preliminary injunction issues." *Rimkus Consulting Group, Inc. v. Cammarata*, 255 F.R.D. 417, 433 (S.D. Tex. 2008) (quoting *Justin Inds., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262, 268 n. 7 (5th Cir. 1990).

The Court finds that Sabre has established a prima facie case that an irreparable injury will occur if the preliminary injunction does not issue. Sabre has invested not only money, but

time and effort to establish solid working relationships and good will, the loss of which is not quantifiable. The relationships of its employees that Sabre has worked to cultivate over many years is likewise not quantifiable.

### 3. Balance of Hardships

The Court finds that Sabre has established a prima facie case that the threatened injury to Sabre outweighs the threatened harm the injunction may do to McLaurin. Any harm to McLaurin is a creation of his own doing, and the balancing of hardship cannot tip towards him.

### 4. The Public Interest

Louisiana and its courts have an interest in enforcing parties' agreements. Injunctive relief serves the public interest by preserving Sabre's property rights and enforcing the provisions of a valid contract, as the public has an interest in ensuring that parties comply with their contractual obligations. Therefore, Sabre has established a prima face case on this issue.

## B. Bond

As indicated above, in Paragraph 16 of the agreement, McLaurin agreed that Sabre shall be entitled to a preliminary or permanent injunction without posting a bond in order to prevent the continuation of a violation of the Agreement. Therefore, the Court will not set a bond for the issuance of the preliminary injunction.

## III. CONCLUSION

For the foregoing reasons, Sabre's Motion for Preliminary Injunction [Doc. No. 2] is GRANTED IN PART and DENIED IN PART. To the extent Sabre seeks a preliminary injunction without bond prohibiting and enjoining McLaurin from continuing his employment with MXS and prohibiting and enjoining McLaurin from soliciting Sabre employees for

13

employment with MXS, the motion is **GRANTED.** To the extent Sabre seeks a preliminary injunction ordering McLaurin to return Sabre's Confidential or Proprietary Information, the motion is **DENIED**.

MONROE, LOUISIANA, this 19th day of August, 2019.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE