UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **SABRE INDUSTRIES, INC.** | **CASE NO. 5:19-CV-00934** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JOSEPH MCLAURIN, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

**MEMORANDUM RULING**

Pending before the Court are a Motion for Summary Judgment, Motion for Sanctions and/or Motion for Attorney's Fees [Doc. No. 277] filed by Defendant Module X Solutions, LLC ("MXS"), and a Motion for Partial Summary Judgment [Doc. No. 281] filed by Plaintiff Sabre Industries, Inc. ("Sabre"). Sabre filed an opposition to MXS's motion [Doc. No. 291], and MXS filed an opposition to Sabre's motion [Doc. No. 290]. MXS also filed a reply to Sabre's opposition [Doc. No. 298].

For the following reasons, MXS's Motion for Summary Judgment [Doc. No. 277] is **GRANTED**. MXS's Motion for Sanctions and/or Attorney's Fees [Doc. No. 277] is **DENIED**. Sabre's Motion for Partial Summary Judgment [Doc. No. 281] is **DENIED**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On July 19, 2019, Sabre filed suit in this Court against Joseph McLaurin ("McLaurin").[1] Subsequently, in its Second Amended Complaint, Sabre added MXS, McLaurin's then-employer, as a defendant to the suit.[2] Sabre alleges that MXS tortiously interfered with Sabre's business relationships and engaged in unfair trade practices in violation of the Louisiana Unfair Trade

---

[1] [Doc. No. 1].
[2] [Doc. No. 31].

Practices Act ("LUTPA") by using McLaurin to solicit Sabre employees.[3] These two claims against MXS are the only remaining issues before the Court.

The events leading up to the suit are as follows. McLaurin began working for Sabre in August of 2009 as a Materials Manager.[4] Over the next ten years, McLaurin held various other positions while working for Sabre until his ultimate termination for cause on May 8, 2019.[5] Previously, in June of 2014, McLaurin signed a Non-Disclosure, Non-Solicitation, and Fair Competition Agreement ("the Agreement") with Sabre.[6] McLaurin stated that, after his termination from Sabre, he sought the advice of Shreveport attorney, Pamela Jones, who informed McLaurin that the Agreement was unenforceable.[7]

After leaving Sabre, McLaurin began working for MXS on June 17, 2019.[8] MXS asserts that during McLaurin's employment, he did not have any customer contact nor did he attempt to introduce any new customers to MXS.[9] However, Sabre alleges that "MXS induced McLaurin to violate his Agreement by offering referral bonus payments for the solicitation of specific Sabre employees in an effort to unfairly compete against Sabre."[10] Sabre further alleges that throughout his employment with MXS, McLaurin "participated in the interviews of Sabre employees" and encouraged Sabre employees to leave Sabre to come work for MXS.[11]

---

[33] [Id. at 8–9, ¶44–56].
[4] [Id. at ¶9].
[5] [Id. at 2–3, ¶10–15].
[6] [Id. at ¶16].
[7] [Doc. No. 277-1 at 5].
[8] [Id. at 6].
[9] [Id.].
[10] [Doc. No. 31 at ¶36].
[11] [Id. at ¶37–38].

On July 19, 2019, Sabre filed suit against McLaurin in this Court for breach of contract.[12] In August 2019, after this Court issued a preliminary injunction prohibiting McLaurin's employment with MXS, MXS terminated McLaurin.[13]

Sabre later added MXS as a party to the lawsuit and added claims for tortious interference with business relationships, unfair trade practices, violations of the Federal Defend Trade Secrets Act, and conversion of confidential information to the Complaint.[14] Subsequently, Sabre voluntarily dismissed its claims against McLaurin without prejudice because McLaurin filed a Suggestion of Bankruptcy.[15] Then, in July of 2022, Sabre dismissed with prejudice its claims against MXS for misappropriation of trade secrets and confidential information because it had insufficient evidence to support the claim.[16] Thus, the only remaining claims in this suit are the tortious interference with business relationships claim and the claim under LUTPA against MXS.

In its Motion for Summary Judgment, MXS requests the dismissal of the remaining claims against it because, MXS argues, there is no evidence to support a finding of liability.[17] Specifically, MXS argues that Sabre has no evidence that MXS solicited or improperly hired Sabre's at-will employees so as to constitute tortious interference or unfair trade practices under Louisiana law.[18] Further, MXS asks this Court to issue Rule 11 sanctions and/or attorney's fees under 18 U.S.C. § 1836 because Sabre filed and continued to litigate a frivolous lawsuit long after it became clear that there was no evidence in support of Sabre's claims.[19]

---

[12] [Doc. No. 1 at 6].
[13] [Doc. No. 277-1 at 6]; [Doc. No. 23].
[14] [Doc. No. 31].
[15] [Doc. Nos. 53 & 54].
[16] [Doc. Nos. 251 & 252].
[17] [Doc. No. 277].
[18] [Doc. No. 277-1 at 9].
[19] [Id. at 25].

In its opposition to MXS's Motion for Summary Judgment, Sabre argues that MXS hired McLaurin with "full knowledge that McLaurin had a noncompete agreement and that his agreement prohibited him from soliciting and/or hiring Sabre employees for one year after his termination with Sabre."[20] Sabre argues that the combination of this knowledge and MXS's inability to actually participate in the same market as Sabre without new employees constitutes sufficient evidence of MXS's wrongful conduct.[21] Sabre makes an identical argument in its Motion for Partial Summary Judgment on the issue of MXS's liability.[22] Additionally, Sabre argues against the imposition of sanctions because, it asserts, the claims against MXS were brought in good faith.[23]

In its reply brief, MXS asserts that Sabre has simply failed to prove a claim for tortious interference because there is no evidence of "actual malice" on MXS's part.[24] Further, MXS argues that the claim for unfair trade practices under LUTPA must similarly fail because there is no evidence of MXS's "specific intent to harm" Sabre.[25]

The issues are briefed, and the Court is prepared to issue a ruling.

**II.    LAW AND ANALYSIS**

    **A. Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no

---

[20] [Doc. No. 291 at 1].
[21] [Id.].
[22] [Doc. No. 281].
[23] [Doc. No. 29 at 10].
[24] [Doc. No. 298 at 1].
[25] [Id. at 3].

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted).; *see also* Fed. R. Civ. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248). However, in evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *See Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

### B. Analysis

Because both MXS's Motion for Summary Judgment and Sabre's Motion for Partial Summary Judgment analyze MXS's potential liability under the two remaining claims against it for tortious interference and unfair trade practices, the two motions will be analyzed jointly below.

### 1. Tortious Interference with a Business Relationship

To succeed on a claim of tortious interference with a business relationship under Louisiana law, a plaintiff "must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff." *Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1, 10 (5th Cir. 1992) (quoting *McCoin v. McGehee*, 498 So.2d 272, 274 (La. App. 1st Cir. 1986). "Significantly, it is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party." *St. Landry Homestead Fed. Sav. Bank v. Vidrine*, 118 So.3d 470, 490 (La. App. 3 Cir. 6/12/13), *writ denied*, 2126 So.3d 1283 (La. 12/2/13), *and writ denied*, 126 So.3d 1283 (La. 12/2/13). Notably, "the courts do not look on this particular cause of action with favor." *Id.* "Proof of this cause of action has been made more difficult by the imposition of an 'actual malice' element of proof on the plaintiff." *Id.*

MXS argues that Sabre's "speculative and conclusory allegations" cannot rise to the level of "actual malice" required by Louisiana law for a claim of tortious interference.[26] Although Sabre alleged that MXS "wrongfully and tortiously induc[ed] or caus[ed] Sabre employees to leave their employment with Sabre," MXS asserts that there has been no evidence throughout the course of discovery to support these claims.[27] Importantly, while Sabre initially relied on an alleged disclosure of confidential information as support for the claims, MXS points out that "Sabre has now acknowledged that there is no evidence whatsoever that MXS acquired any Confidential or Proprietary Information of Sabre and has dismissed all related claims," as evidenced by the dismissal of that claim against MXS with prejudice.[28]

---

[26] [Doc. No. 277-1 at 13].
[27] [Id.].
[28] [Id.].

In addition to the apparent insufficiency of Sabre's pleadings, MXS points out that the evidence discovered by Sabre does not support a finding of actual malice on MXS's part.[29] First, MXS argues that the text messages from Shannon Lee and Leslie Walton, which Sabre argues demonstrate McLaurin's solicitation of employees, do not establish actual malice.[30] Notably, McLaurin denied that the messages were intended to offer employment at MXS.[31] Further, MXS points out that statements from each of these witnesses show that neither employee actually came to work for MXS.[32] And ultimately, even if these messages were to show solicitation by McLaurin, they do not establish that MXS had knowledge of any solicitation.[33] MXS also directs the Court's attention to Sabre's supplemental discovery response, which, among other things, states: "To date, Sabre has not discovered specific information or documents in its possession, custody or control to confirm that McLaurin and/or MXS intentionally interfered with Sabre's existing business relationships or valid business expectancies by inducing or causing Sabre's employees to leave their employment to work for MXS."[34] Thus, MXS argues that there is no evidence to support a finding of actual malice as required by Louisiana law to establish tortious interference with a business relationship.

Additionally, in its Motion for Summary Judgment, MXS also refers to the "poor work environment" at Sabre as context for why employees may have left their employment with Sabre to work for MXS instead.[35] Further, MXS explains that it began engaging in its own recruitment efforts and "aggressive[] advertising" as far back as 2019 in an attempt to expand its business.[36]

---

[29] [Id. at 14].
[30] [Id. at 15].
[31] [Id. at 16].
[32] [Id.].
[33] [Id. at 17].
[34] [Id. at 18].
[35] [Id. at 19].
[36] [Id. at 21].

All of these factors, MXS argues, demonstrate that MXS was acting on good business judgment, not with any intent to harm Sabre's business.[37]

In its opposition to MXS's Motion and in its own Motion for Partial Summary Judgment, Sabre argues that because MXS had knowledge of McLaurin's Agreement when McLaurin was hired, yet ignored the Agreement, MXS improperly interfered with Sabre's business relationships.[38] Sabre cites to case law from North Carolina to argue that because MXS had knowledge of Sabre's contractual rights, MXS is "subject to liability even though he is mistaken, as to their legal significance and believes that there is no contract or that the contract means something other than what is judicially held to mean."[39] However, despite these arguments, Sabre failed to address the "actual malice" standard for a tortious interference claim.

This Court agrees with MXS that Sabre simply has not produced evidence of actual malice by MXS to satisfy Louisiana law's narrow definition of a claim for tortious interference with a business relationship. As explained by Louisiana courts, "the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings." *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 812 So.2d 834, 841 (La. App. 4 Cir. 3/6/02). "Simply put, in most cases in which a corporation is acting to maximize profits—rather than to harm another business—it will be difficult for a plaintiff to produce evidence of bad faith or malicious intent." *Id.* (quoting George Denegre, Jr., et al., *Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference*, 45 LOY. L. REV. 395, 401 (1999)).

---

[37] [Id.].
[38] [Doc. No. 291 at 7].
[39] [Id. at 8].

Here, there is no evidence that MXS acted with malice or ill will towards Sabre. Even if McLaurin is found to have solicited certain Sabre employees, there is no evidence that MXS knew of this alleged solicitation or intended harm to Sabre. Even further, the evidence of Sabre's poor work environment, combined with MXS's general business goals of expanding and aggressively advertising, do not satisfy the high standard of malice required under Louisiana law. Thus, MXS's motion is **GRANTED** as to Sabre's claim for tortious interference with business relationships, and such claim is hereby **DISMISSED WITH PREJUDICE**.

### 2. Louisiana Unfair Trade Practices Act

Under the LUTPA, a trade practice is unfair "when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious." *Lilawanti Enterprises, Inc. v. Walden Book Co.*, 670 So.2d 558, 561 (La. App. 4 Cir. 2/29/96). The LUTPA "requires a case-by-case determination of what is an unfair trade violation." *JCD Mktg. Co.*, 812 So.2d at 842. "Louisiana jurisprudence, however, has declined to find LUTPA violations when the alleged conduct was simply a 'normal business relationship.'" *Id.* (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994)). Importantly, "LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993). "The statute does not forbid a business to do what everyone knows a business must do: make money." *Id.*

Ultimately, to recover under the LUTPA, a plaintiff has to "prove some element of fraud, misrepresentation, deception or other unethical conduct." *Omnitech Int'l, Inc.*, 11 F.3d at 1332 (quoting *Dufau v. Creole Engineering, Inc.*, 465 So.2d 752, 758 (La. Ct. App.), *writ denied*, 468 So.2d 1207 (La. 1985)). "The courts interpreting the LUTPA have been hesitant to impose liability where the evidence reveals merely a normal business relationship." *Id.* Thus, "the range of

prohibited practices under LUTPA is extremely narrow." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So.3d 1053, 1060 (La. 2010). "Therefore, only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." *Id.*

In its Motion for Summary Judgment, MXS argues that Sabre failed to provide evidence to support the LUTPA claim for the same reasons it failed to prove its tortious interference claim, discussed above.[40] MXS argues that it is not enough for Sabre to show that MXS hired away Sabre's at-will employees; rather, Sabre must demonstrate that this was done "by means of fraud, misrepresentation, deception, or other unethical conduct, and that MXS did so with actual malice and/or intent to harm Sabre's business."[41] This Sabre has not done.

In its opposition and in its own Motion for Partial Summary Judgment, Sabre again argues that MXS was aware of McLaurin's Agreement, yet hired McLaurin anyway and allowed him to participate in interviews of potential new employees.[42] Sabre further points out that "MXS wanted to utilize Sabre's key employment relationships – those who knew how to work on energy storage buildings – to get into the energy storage market. It was essentially attempting to generate business faster than it could have done without Sabre's employees."[43] Sabre thus argues that it is an unfair trade practice to hire a competitor's employees in order to better compete in a specific market.[44]

This Court declines to adopt Sabre's definition of an unfair trade practice and finds that Sabre failed to produce evidence of fraud, deception, or misrepresentation on behalf of MXS. After MXS asserted that it had no knowledge of any solicitation by McLaurin, and that MXS merely

---

[40] [Doc. No. 277-1 at 12].
[41] [Id. at 12–13].
[42] [Doc. No. 291 at 10].
[43] [Id.].
[44] [Id.].

10

made good business decisions in hiring new employees, the burden shifted to Sabre to establish the bad faith of MXS. *See Cheramie Servs., Inc.*, 35 So.3d at 1062. Merely reiterating the conclusory allegations of the Complaint, without additional evidentiary support, is insufficient to establish MXS's liability. Thus, MXS's Motion is **GRANTED** as to Sabre's claim for violations of LUTPA, and such claim is hereby **DISMISSED WITH PREJUDICE**.

### 3. MXS's Motion for Sanctions

Lastly, MXS asks this Court to issue sanctions under Federal Rule of Civil Procedure 11 and/or to award attorney's fees under the Federal Defend Trade Secrets Act ("FDTSA") due to Sabre's alleged bad faith in pursuing its claims against MXS.[45] MXS points to several of Sabre's allegations that MXS argues "are false and have at all times been without factual support or evidentiary basis."[46] MXS asserts that these allegations "are based purely on speculation and conjecture," and thus, Sabre should not have pursued the claims for almost three years.[47] The primary focus of this Motion for Sanctions appears to be Sabre's claim for misappropriation of confidential information and/or trade secrets, which was voluntarily dismissed in July of 2022.[48]

Sabre responds that it was justified in maintaining the misappropriation claim against MXS, despite its later decision to dismiss the claim for lack of evidence, because there was an appearance of impropriety on behalf of McLaurin and MXS from the start.[49] Specifically, Sabre had evidence that McLaurin "downloaded information on jump drives of which he had no business even accessing" before going to work for MXS.[50] Sabre asserts that it had "every reason to suspect that MXS was in cahoots with McLaurin in attempting to gain Sabre's confidential information,"

---

[45] [Doc. No. 277-1 at 25].
[46] [Id. at 28].
[47] [Id.].
[48] [Id.]; [Doc. Nos. 251 & 252].
[49] [Doc. No. 291 at 11].
[50] [Id.].

11

and that the discovery process allowed them to flesh out that suspicion.[51] After discovery produced no evidence in support, Sabre "did the right thing by voluntarily dismissing this claim."[52] Thus, Sabre argues there is no basis for this Court to award the extreme remedy of sanctions to MXS.

This Court agrees with Sabre and finds that there is insufficient evidence of Sabre's bad faith to justify sanctions or attorney's fees. Pursuing a claim via discovery, especially after this Court denied a Motion for Judgment on the Pleadings filed by MXS and found that Sabre's allegations were sufficient to proceed, does not constitute bad faith by Sabre.[53] Thus, MXS's Motion for Sanctions and/or Attorney's Fees is **DENIED**.

### III. CONCLUSION

For the reasons set forth herein, **IT IS ORDERED, ADJUDGED, AND DECREED** that MXS's Motion for Summary Judgment [Doc. No. 277] is **GRANTED**. All claims filed by Sabre against MXS are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** MXS's Motion for Sanctions and/or Attorney's Fees [Doc. No. 277] is **DENIED**.

**IT IS FURTHER ORDERED** that Sabre's Motion for Partial Summary Judgment [Doc. No. 281] is **DENIED**.

MONROE, LOUISIANA, this 31st day of January, 2023.

_____
Terry A. Doughty
United States District Judge

---

[51] [Id.].
[52] [Id. at 12].
[53] [Doc. No. 97].